IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE GRANT, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-1093 |
| | : | |
| LUIS LLAMAS, | : | |
|     Defendant. | : | |

**MEMORANDUM**

**SÁNCHEZ, J.**                                                                                           **MARCH 4, 2025**

    Plaintiff Andre Grant brings this civil action against Luis Llamas, an individual with whom he previously resided and whose criminal activity at their shared home adversely impacted Grant. (Compl. at 2.) Grant seeks to proceed *in forma pauperis* in this matter. For the following reasons, the Court will permit Grant to proceed *in forma pauperis* and dismiss his Complaint for lack of jurisdiction.

**I.**     **FACTUAL ALLEGATIONS**[1]

    Grant alleges that on June 16, 2021, police entered the home he shared with Llamas, handcuffed them both, and had them "sit on chairs while the house was being raided for drugs" in connection with a criminal investigation targeting Llamas. (Compl. at 4.) Thereafter, on September 28, 2021, Llamas was charged with one count of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 and was notified that certain of his property may be subject to forfeiture. *See United States v. Llamas*, Crim. A. No. 21-390-1 (E.D. Pa.) (ECF No. 1). Llamas pled guilty to the charge and, on January 25, 2023, was sentenced to eighty-four

---

[1] The following allegations are taken from Grant's Complaint and publicly available dockets. The Court adopts the pagination supplied by the CM/ECF docketing system.

months of imprisonment to be followed by three years of supervised release. *Id.* (ECF No. 30). As part of the terms of his sentence, Llamas forfeited his interest in $70,758.00 in United States currency seized during the June 16, 2021, search of the residence he shared with Grant. *Id.* (ECF No. 30 at 8).

Grant alleges that on the date of the search, he was taken into police custody along with Llamas because he was living at the house, even though he was apparently not involved in any criminal activity. (Compl. at 4.) There is no indication that he was charged with a crime, but he alleges that he was only "released after 15 months." (*Id.*) As a result of these events, Grant claims that he lost his job, his home, and all his belongings and valuables that were "left in the house." (*Id.* at 5.) In this civil action, Grant seeks monetary damages to compensate him for these losses and makes a "plea to the Court to compensate [him] the monetary funds $70,758.00 so [he] can buy a house and help [his] dad." (*Id.*)

Grant attached exhibits to his Complaint, which reflect that he received a notice dated February 3, 2025 from the Unites States Attorney's Office for the Eastern District of Pennsylvania informing him that he had "been identified as a potential owner of the $70,758.00 in United States currency seized on June 16, 2021, during a search of [Llamas's] residence" and explaining how to assert a claim to the property if he sought to do so. (*Id.* at 12-15.) Specifically, the letter informed Grant that he could either: (1) file an ancillary petition with the Clerk of Court within thirty-five days of receipt of the letter, with a copy sent to the U.S. Attorney's Office, to determine whether any interest he might have in the property is legally enforceable; or (2) file a petition for remission or mitigation of forfeiture with the U.S. Attorney's Office within thirty days of receipt of the letter. (*Id.* at 12, 14.) Grant also attached as an exhibit a completed "Claim Form" dated December 5, 2024, in which he states that he has

an interest in the $70,758.00 because of the economic hardship he experienced stemming from the raid. (*Id.* at 7-11.) It is unclear whether he intended this "Claim Form" to be filed as a response to the U.S. Attorney's February 3, 2025 letter to assert his right to the $70,758.00. Nothing related to Grant's potential interest in the seized currency currently appears on the docket for Llamas' criminal case.

## II.     STANDARD OF REVIEW

The Court will permit Grant to proceed *in forma pauperis* because it appears that he is unable to pre-pay the costs for filing this lawsuit. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations and generalized statements do not suffice to state a claim. *See id.* As Grant is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). Further, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## III.     DISCUSSION

Grant's Complaint reflects his intention to bring this case pursuant to the Court's federal question jurisdiction, 28 U.S.C. § 1331. (Compl. at 2.) Section 1331 provides district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

the United States." However, even under a liberal construction of the Complaint, the Court cannot discern any basis for Grant to pursue a federal claim against Llamas such that the Court could exercise jurisdiction under 28 U.S.C. § 1331.[2]

To the extent Grant's Complaint can be liberally construed to raise claims under state law, there is no independent basis for the Court's jurisdiction over any such claims. The only possible basis for jurisdiction is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." "Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). For diversity purposes, an individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Since the Complaint does not allege the parties' States of citizenship, and since it appears that, in any event, both parties are likely

---

[2] It is possible that Grant sought to bring civil rights claims pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). Since Llamas is not a state actor, section 1983 clearly does not apply to him. Grant's allegations are therefore insufficient to invoke the Court's jurisdiction based on section 1983. *See Rose v. Husenaj*, 708 F. App'x 57, 60 (3d Cir. 2017) (*per curiam*) (concluding that *pro se* complaint raising "civil rights violations" failed to present a federal question when "[d]espite [plaintiff's] bare citations, none of his claims arise 'under the Constitution, laws, or treaties of the United States,' 28 U.S.C. § 1331, nor does [plaintiff] seek a remedy granted by the Constitution or federal law").

Pennsylvania citizens, diversity is lacking. Accordingly, any state claims against Llamas are also dismissed for lack of subject matter jurisdiction.

Although Grant has not stated any claim against Llamas within the Court's jurisdiction, under a liberal reading of the Complaint and exhibits, it is possible that Grant filed this action so he could pursue any rights he has to the $70,758.00 before it is forfeited. In that case, he mistakenly filed a civil complaint against Llamas, instead of either pursuing his remedies in Llamas' criminal case or through the U.S. Attorney's Office. In an abundance of caution, and to ensure that Grant's rights are not inadvertently forfeited, the Court will direct the Clerk of Court to docket the claim form that Grant attached to his Complaint in Llamas' criminal case, (Compl. at 7-11), so that the Judge overseeing Llamas' criminal case and the U.S. Attorney's Office have notice of Grant's claim. The Court expresses no opinion on how the matter should proceed thereafter.

## IV.     CONCLUSION

For the foregoing reasons, the Court will permit Grant to proceed *in forma pauperis* and will dismiss his Complaint without prejudice for lack of jurisdiction. Grant will not be permitted to file an amended complaint because amendment would be futile. However, the Court will direct the Clerk of Court to file Grant's claim form in Llamas' criminal case for the reasons noted above.

An appropriate Order dismissing this case follows and shall be docketed separately. *See* Fed. R. Civ. P. 58.

BY THE COURT:

/s/ Juan R. Sánchez
**Juan R. Sánchez, J.**